[Cite as *State v. Dobson*, 2026-Ohio-2929.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 114967 |
| v. | : | |
| RONDELL DOBSON, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 30, 2026

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-24-697438-B

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney and Andrew Boyko, Assistant Prosecuting Attorney, *for appellee.*

Susan J. Moran, *for appellant.*

MARY J. BOYLE, P.J.:

{¶ 1} Defendant-appellant Rondell Dobson ("Dobson") appeals his convictions following a jury trial in the General Division of the Cuyahoga County

Common Pleas Court ("General Division").  He raises the following assignments of error for review:

> **Assignment of Error I:**  The trial court erred when it determined that it lacked discretion to elect between one-year and three-year firearm specification sentences consistent with *State v. Holliman*, [2025-Ohio-1187 (8th Dist.)].

> **Assignment of Error II:**  The Juvenile Court erred when it found [Dobson's] bindover to be mandatory rather than discretionary.

> **Assignment of Error III:**  The Trial Court abused its discretion by denying [Dobson's] request for reverse waiver/bindover.

> **Assignment of Error IV:**  The Trial Court committed plain error in failing to instruct the jury that [Dobson's] conviction for participating in a criminal gang activity required more than passive or nominal involvement.

> **Assignment of Error V:**  The evidence in this case is legally insufficient to justify [Dobson's] convictions, in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and Article I, Section 10 of the Constitution of the State of Ohio.

> **Assignment of Error VI:**  [Dobson's] convictions are against the manifest weight of the evidence in violation of his right to due process as provided in the Fifth and Fourteenth Amendments to the United States Constitution and Article 1, Section 16 of the Ohio Constitution.

{¶ 2} For the reasons set forth below, we affirm Dobson's convictions.

## I.  Facts and Procedural History

### A.  Juvenile Court Proceedings

{¶ 3} On June 25, 2024, the State filed a 46-count delinquency complaint in the Juvenile Division of the Cuyahoga County Common Pleas Court ("juvenile court") against Dobson alleging the following crimes if committed by an adult:  1 count of participating in criminal gang activity, 13 counts of felonious assault, 3

counts of discharge of a firearm on or near prohibited premises, 3 counts of having weapons while under disability ("HWWUD"), 3 counts of aggravated robbery, 7 counts of robbery, 4 counts of improperly discharging a firearm at or into a habitation or a school safety zone, 4 counts of improper handling of a firearm in a motor vehicle, 3 counts of receiving stolen property, 1 count of failure to comply, and 1 count of possession of a dangerous ordnance. Nearly all the counts included firearm specifications. The charges related to multiple incidents occurring from January 1, 2024, through June 24, 2024. Two juveniles were charged as co-delinquents with Dobson. The State filed a motion to relinquish jurisdiction and notice of mandatory bindover to General Division requesting a probable cause hearing.

{¶ 4} On July 10, 2024, the juvenile court held a probable cause hearing. The State presented testimony from five detectives, as well as numerous exhibits. This evidence will be detailed in the discussion of the second assignment of error.

{¶ 5} After the hearing, the juvenile court found that Dobson was subject to a mandatory bindover to the General Division. It specifically held that Dobson was 16 years old at the time of the conduct charged and that there was probable cause for 39 of the 46 counts, including: 1 count of participating in criminal gang activity, 11 counts of felonious assault, 2 counts of discharge of a firearm on or near prohibited premises, 2 counts of HWWUD, 3 counts of aggravated robbery, 7 counts of robbery, 4 counts of improperly discharging a firearm at or into a habitation or a school safety zone, 4 counts of improper handling of a firearm in a motor vehicle, 3

counts of receiving stolen property, 1 count of failure to comply, and 1 count of possession of a dangerous ordnance, as well as all the attendant firearm specifications.

## B. General Division Proceedings

{¶ 6} On December 6, 2024, Dobson along with Nathan Parker ("Parker"), Lonney Jones, Arshawn Palmer, De'Auntez Crosby ("Crosby"), and William Hampton were charged in a 72-count indictment; 42 counts pertained to Dobson including:

Count 1 — Participating in a Criminal Gang in violation of R.C. 2923.42(A), a felony of the second degree, with one- and three-year firearm specifications;

Counts 23, 36, 40, 48, and 60 — HWWUD in violation of R.C. 2923.13(A)(2), a felony of the third degree, with weapon forfeitures;

Counts 25, 52, and 56 — Aggravated Robbery in violation of R.C. 2911.01(A)(1), a felony of the first degree, with one- and three-year firearm specifications and weapon forfeitures;

Counts 26, 53, and 57 — Robbery in violation of R.C. 2911.02(A)(1), a felony of the second degree, with one- and three-year firearm specifications and weapons forfeitures;

Counts 27, 54 and 58 — Robbery in violation of R.C. 2911.02(A)(2), a felony of the second degree, with one- and three-year firearm specifications and weapon forfeitures;

Counts 55 and 59 — Robbery in violation of R.C. 2911.02 (A)(3), a felony of the third degree, with one- and three-year firearm specifications and weapon forfeitures;

Counts 28, 38, and 43 — Felonious Assault in violation of R.C. 2903.11(A)(1), a felony of the second degree, with one- and three-year firearm specifications and weapon forfeitures;

Counts 29, 30, 31, 32, 39, 44, 45, and 46 — Felonious Assault in violation of R.C. 2903.11(A)(2), a felony of the second degree, with one- and three-year firearm specifications and weapons forfeitures.

Counts 33, 34, 35, and 47 — Improperly Discharging a Firearm at or into a Habitation or a School Safety Zone in violation of R.C. 2923.161(A)(1), a felony of the second degree, with one- and three-year firearm specifications and weapons forfeitures;

Counts 37 and 42 — Discharge of Firearm on or Near Prohibited Premises in violation of R.C. 2923.162(A)(3), a felony of the first degree, with one-, three-, and five-year firearm specifications and weapons forfeitures;

Counts 41, 51 and 65 — Improperly Handling Firearms in a Motor Vehicle in violation of R.C. 2923.16(B), a felony of the fourth degree;

Counts 49, 50, and 62 — Receiving Stolen Property in violation of R.C. 2913.51(A), a felony of the fourth degree, with a one-year firearm specification;

Count 61 — Failure to Comply with an Order or Signal of a Police Officer in violation of R.C. 2921.331(B), a felony of the third degree, with a one-year firearm specification;

Count 68 — Unlawful Possession of Dangerous Ordnance in violation of R.C. 2923.17(A), a felony of the fifth degree, with one- and six-year firearm specifications.

{¶ 7} The charges alleged criminal activity occurring from January 1, 2024, through May 20, 2024, which included displaying firearms, gang signs, and symbols on social media, riding around in stolen vehicles, and using firearms in the commission of robberies and shootings. Prior to trial, three of Dobson's co-defendants accepted plea agreements, while Dobson and Parker elected to proceed

to a jury trial.[1]  Dobson waived a jury, and the HWWUD counts were tried to the bench.

{¶ 8} The State presented 32 witnesses and over 1000 exhibits.  The following is a summary of the evidence adduced at trial that is pertinent to this appeal.

### Count 1 — Criminal Gang Activity — January-May 2024

{¶ 9} Detective Michael Harrigan ("Det. Harrigan") of the Cleveland Police Department's Gang Impact Unit testified at trial as a criminal gang expert without objection by defense.  He testified to his investigation of several gangs, which ultimately led to the discovery of a criminal organization known as "237." According to Det. Harrigan, this gang consisted of a combination of several gangs, including Blitz gang, which is referred to as "27," Check Gang which is referred to as "37," and a gang referred to as "LTB" or "117."  (Tr. 1627-1630.)  Det. Harrigan testified that 237-gang territory encompassed the areas near East 123rd Street and Locke Avenue and East 117th Street and St. Clair Avenue in Cleveland's fifth police district, as well as Hough Avenue and East 59th Street in Cleveland's third police district.  Based on his investigation, he testified that 237 formed near the end of 2023 or early January 2024.

{¶ 10} Det. Harrigan testified that he identified several individuals through social media, including Dobson and the codefendants, who were involved with the

---

[1] Nathan Parker's convictions were affirmed by this court on June 11, 2026.  *See State v. Parker*, 2026-Ohio-2178 (8th Dist.).

237 gang. These individuals commonly posted on social media together, engaged in group messages, and were observed interacting regularly by Det. Harrigan. He noted regular and recurrent use of emojis, specifically green hearts and snakes, and references to the number 237, which, based on his experience, indicated inclusion in the gang. Dobson was pictured in several of these posts.

{¶ 11} Det. Harrigan also identified multiple Instagram handles that he determined were owned and operated by members of 237. Two Instagram handles were associated with Dobson and identified as @Fr33dabros17 and @Hitdafully17. These accounts were involved in several group chats observed by Det. Harrigan, including an exchange from @Hitdafully17 wherein Dobson demanded an individual remove content claiming to be part of the 237 gang because he was not a member. Det. Harrigan also stated that Dobson's nicknames are "Rondo" and "Ron Ron." (Tr. 1658.)

{¶ 12} Det. Harrigan testified that the members of 237 also participated in shared music named "237 music" and a shared cash app account. The cash app account was linked to @Fr33dabros17. In addition to the online accounts, Det. Harrigan identified members through several photos and videos wherein members shared specific articles of clothing, including a black and white hooded sweatshirt with the word presidential over the top and the number 23 in the center (hereafter "23 sweatshirt"), as well as a black and white hooded sweatshirt with Benjamin Franklin depicted on the front (hereafter "Ben Franklin sweatshirt").

{¶ 13} During an Instagram live video, Dobson was observed wearing the 23 sweatshirt where he displayed a firearm. He was also wearing the 23 sweatshirt during a shooting that occurred at a basketball court. Parker was also observed in the same sweatshirt on several occasions, including when he and Dobson were arrested. Dobson was wearing the Ben Franklin sweatshirt on the day he was arrested. He also wore the Ben Franklin sweatshirt in several Instagram posts.

{¶ 14} Former gang member Nicholas McGee ("Nicholas") testified for the State about his previous involvement and knowledge of 237. He described 237 as a group of teens that hang around each other, like a brotherhood. Nicholas was able to identify Dobson, Parker, and several other individuals as members of 237. He testified that he communicated daily with these individuals on social media and that they would use social media to obtain guns, clothing, and drugs and to participate in "clown opps." (Tr. 1378.) Nicholas explained that "opps" are gangs who are in opposition to the 237 gang and "clown opps" is when rival gangs make fun of each other. Nicholas confirmed that 237 had disputes, referred to as "beefs," with other gangs and would disrespect or "clown opps" with rival gangsthrough Instagram and social media. (Tr. 1377-1378.) Nicholas further testified that he knew Dobson his nickname was "Ron-Ron," and @Fr33dabros17 was Dobson's Instagram handle. (Tr.1369-1375.)

{¶ 15} The jury found Dobson guilty of Count 1, participating in a criminal gang and the attendant one- and three-year firearm specifications.

## Count 23 — Instagram Live – April 13, 2024

{¶ 16} Det. Harrigan testified that on April 13, 2024, while monitoring the Instagram Account @Hitdafully17, which was identified as one of Dobson's accounts, Det. Harrigan observed a live Instagram video of Dobson, Parker, and two other gang members brandishing weapons, which were equipped with automatic conversion devices that allow semiautomatic weapons to be converted into automatic weapons with the flip of a switch. (State's exhibit No. 2.) The conversion devices are also known as auto-sears or Glock "switches." (Tr. 1731-1732.) Det. Harrigan testified that in the video, Dobson held the "Draco-style firearm with the red tape around the handgrip." (Tr. 1711.) From the video, Det. Harrigan determined that Dobson and his friends were in the area of 2265 East 100th Street. Subsequently, on April 23, 2024, Det. Harrigan executed a search warrant on this property, recovering, among other things, eight firearms and several drum magazines that were similar to the drum magazines displayed in the Instagram Live video. (State's exhibit No. 1002.)

{¶ 17} Dobson was found guilty of HWWUD by the trial court as it pertains to these actions.

## Counts 25-36 — Basketball Court Shooting — April 15, 2024

{¶ 18} On April 15, 2024, there was a shooting between multiple individuals of the 237 gang and individuals from another group. This occurred during the day, in the area of the basketball court located at Magnet School on East 59th and Hough Avenue, with dozens of bystanders present. The shooting was captured on video

surveillance.  (State's exhibit Nos. 471-472.)  Det. Harrigan identified Dobson in the video of this incident as one of the people running, pointing a gun, and then tripping over Crosby.  (Tr. 1753-1754; State's exhibit Nos. 1 and 471.)   He testified that "several individuals" were shooting during the incident.  (Tr. 1755.)  Dobson was wearing the 23 sweatshirt and admitted during an interview with detectives that he was present and had tripped over codefendant Crosby while running from the scene, which was also captured on video.  Three homes were struck with bullets, and one bystander was struck in the leg by a bullet.  Numerous shell casings were recovered throughout the basketball court and barbecue area.

{¶ 19} At the Crim.R. 29 motion hearing, the trial court granted said motion dismissing one count of aggravated robbery and two counts of robbery.  Dobson was found not guilty by the jury of three counts of felonious assault concerning three John Does.  Nevertheless, the jury returned a guilty verdict for two counts of felonious assault for the person shot in the leg and three counts of discharge into a habitation for the three homes struck by gunfire.  The trial court returned a guilty verdict of one count of HWWUD.

### Counts 37-41 — East 77th and Superior — April 16, 2024

{¶ 20} The next day, during a drug deal gone awry, an individual was shot in the ear.  Video surveillance captured the shooting, which was in the area of East 77th and Superior Avenue.  (State's exhibit Nos. 547-548.)  The video shows a Toyota 4Runner with a broken driver's side rear window as the suspect vehicle.  Det. Harrigan identified an individual in the surveillance video wearing the Ben Franklin

sweatshirt who he believed to be Dobson because Det. Harrigan observed Dobson wearing the same sweatshirt throughout his investigation. Dobson was arrested on April 25, 2024, wearing the Ben Franklin sweatshirt.

{¶ 21} The jury returned not guilty verdicts for all counts associated with this event, including two counts of discharge of a firearm on or near prohibited premises, one count of felonious assault, one count of HWWUD, and one count of improper handling of a firearm in a motor vehicle.

### Counts 42-51 — Hecker Avenue and East 74th — April 24, 2024

{¶ 22} Sometime in April 2024, the owner of a 2020 blue Kia Optima reported that her vehicle was stolen from her driveway. On April 24, 2024, while the owner was driving with her boyfriend and their toddler, they observed her stolen Optima with five occupants. The owner followed her blue Kia Optima, while calling police. The stolen blue Kia Optima stopped at 7304 Hecker Avenue. The owner stopped behind her blue Kia Optima, and a silver Kia stopped behind the owner, boxing her in between the two Kias. Several individuals exited the blue Kia Optima and fired multiple rounds into the vehicle that the owner was driving. Then the individuals in the silver Kia drove past the owner and fired rounds into the vehicle she was driving. The shooting was captured on video surveillance. (State's exhibit No. 184.) The boyfriend was shot in the eye, which resulted in the complete loss of one eye. No other occupants were injured; however, a home on East 74th Street where Hecker Avenue dead ends was hit by bullets. Detectives recovered shell casings from the scene.

{¶ 23} At the Crim.R. 29 hearing, the trial court granted said motion as to one count of discharge of a firearm at or near prohibited premises, four counts of felonious assault, one count of improper discharge of a firearm into a habitation, one count of HWWUD, and two counts of receiving stolen property. As it pertains to this shooting, the jury returned a guilty verdict on Count 51, improper handling of a firearm.

### Counts 52-68 — Aggravated Robbery of the Brothers and Crash — April 25, 2024

{¶ 24} On April 25, 2024, two people who described themselves as brothers drove to the area of Wade Park to conduct a sale of marijuana with persons who arrived in a silver Kia Sportage. One person from the silver Kia exited the front passenger seat and brother one entered the silver Kia's front passenger seat to conduct the sale while brother two remained in their vehicle. Upon entering the silver Kia, the people in the silver Kia pulled guns on brother one. Brother one described three guns, including a Glock 19 handgun with a drum magazine, a Glock 23 handgun with an extended magazine, as well as an automatic assault rifle pistol ("ARP"). Brother one testified that both Glock handguns had a conversion switch. The people in the silver Kia took several items from brother one, including marijuana and a phone.

{¶ 25} Brother two testified that he was lying in the backseat of their vehicle when an occupant of the silver Kia entered his vehicle and started searching it. The person wore a red jacket and mask and had an ARP. He then observed his brother

exit the silver Kia and the driver of the silver Kia pointing two guns at him. Brother two moved to the driver's seat of his vehicle and when brother one returned to the vehicle they chased after the silver Kia. However, they were able to flag down police in the area, who then chased the silver Kia. The brothers identified a photograph of the silver Kia Sportage involved. (State's exhibit No. 980.)

{¶ 26} Cleveland Police Officer Robert Bjekic ("Officer Bjekic") testified that he was working on both April 24 and 25, 2024. He responded to the shooting of the boyfriend and was aware of two suspect vehicles: a blue Kia Optima and silver Kia Sportage. The following day, while on patrol, Officer Bjekic encountered the silver Kia Sportage in the area of Wade Park. He was then flagged down by the two brothers who reported an aggravated robbery that had just occurred. The same silver Kia Sportage was identified as a suspect vehicle and was spotted by officers fleeing the area.

{¶ 27} Shortly after the silver Kia Sportage fled the robbery location, it was chased by members of the Cleveland police department. The silver Kia clipped a dump truck and crashed. The vehicle accident was captured on video surveillance, which also shows three people fleeing from the silver Kia. (State's exhibit No. 981.) Dobson was arrested following a short foot pursuit. At the time, he was wearing the Ben Franklin sweatshirt that was pertinent to Det. Harrigan's 237 gang investigation. Parker was also arrested after the crash. He was wearing the 23 sweatshirt. Three firearms were recovered. An ARP (long gun) was recovered from the silver Kia, and two Glock 23s with large drum magazines and gold Glock switches

were recovered a short distance from the vehicle where they were discarded as the individuals fled.

{¶ 28} Cleveland Police Detective Daniel McCandless ("Det. McCandless") testified that he observed the crash and three people fleeing from the vehicle. He also observed two Glock 23 handguns on St. Clair Avenue approximately five feet from the vehicle. (Tr. 1047.) The firearms were discarded when Dobson, Parker, and another person exited the silver Kia. Det. McCandless photographed and secured the Glock 23 handguns. He also observed a long gun (ARP) in the passenger side of the silver Kia.

{¶ 29} It is unclear from the evidence whether the fourth person in the silver Kia fled on foot from the scene of the robbery or exited the vehicle prior to the crash.

{¶ 30} DNA was collected from both Dobson and Parker, which was later matched to swabs taken from the Silver Kia Sportage and Blue Kia Optima connecting both of these individuals to the stolen vehicles.

{¶ 31} The two Glock 23 handguns contained serial numbers CAKT850 and CBPU905. The gun containing serial number CBPU905 matched shell casings recovered from the basketball court shooting, the shooting where an individual was hit in the ear, and the scene where boyfriend lost his eye. The gun containing serial number CAKT850 matched shell casings recovered from the shooting where the individual was shot in the ear. In addition, this same gun was displayed, with the serial number visible, by Dobson in one of his social media posts.

{¶ 32} At the Crim.R. 29 motion hearing, the trial court dismissed Count 61, failure to comply. The jury returned guilty verdicts on all counts and the attendant one- and three-year firearm specifications related to this event, including two counts of aggravated robbery, six counts of robbery, and one count each of receiving stolen property, improper handling of a firearm in a motor vehicle, and possession of a dangerous ordnance. The trial court found Dobson guilty of HWWUD as it pertained to this event.

### Sentencing

{¶ 33} Immediately following the trial, the court proceeded to sentencing. Dobson was sentenced to 18 years in prison on the firearm specifications, to be served prior to and consecutive to a term of 3 years in prison for the underlying offenses, which were ordered to be served concurrently, for a total prison term of 21 years. In addition, he was sentenced to a mandatory minimum of 2 years up to a maximum of 5 years of postrelease control. Fines and court costs were waived, and Dobson received 302 days of jail-time credit. This appeal followed.

{¶ 34} For ease of discussion, the assignments of error will be addressed out of order.

## II. Law and Analysis

### A. Mandatory Transfer and Probable Cause

{¶ 35} In Dobson's second assignment of error, he asserts that the juvenile court erred when it transferred Dobson's case to adult court as a mandatory bindover because it was based on insufficient and hearsay evidence that he

personally possessed a firearm during the offenses. He further alleges that complicity (being present or associated with others who had a firearm) is not enough for a mandatory bindover under Ohio law.

{¶ 36} The State counters that the bindover was mandatory pursuant to R.C. 2151.10(A), hearsay is admissible in juvenile bindover proceedings, and there was sufficient evidence demonstrating that probable cause existed to believe that Dobson committed the acts charged.

{¶ 37} "This court's review of the juvenile court's probable-cause determination involves questions of both law and fact. '[W]e defer to the trial court's determinations regarding witness credibility, but we review de novo the legal conclusion whether the state presented sufficient evidence to demonstrate probable cause to believe that the juvenile committed the acts charged.'" *In re J.W.*, 2026-Ohio-1972, ¶ 24 (8th Dist.), quoting *In re A.J.S.*, 2008-Ohio-5307, ¶ 51.

{¶ 38} "As a general rule, juvenile courts have exclusive jurisdiction over children alleged to be delinquent for committing acts that would constitute a crime if committed by an adult." *In re J.W.* at ¶ 18, citing *In re M.P.*, 2010-Ohio-599, ¶ 11, citing R.C. 2151.23(A). "However, R.C. 2151.10 and 2151.12, in conjunction with Juv.R. 30, create a narrow exception to the general rule and provide for the mandatory or discretionary transfer of cases involving allegedly delinquent children to the adult criminal court under certain statutorily prescribed situations." *Id.* R.C. 2152.10(A) sets forth which juvenile cases are subject to mandatory bindover and provides, in relevant part:

(A) A child who is alleged to be a delinquent child is eligible for mandatory transfer and shall be transferred as provided in section 2152.12 of the Revised Code in any of the following circumstances:

. . .

(2) The child is charged with a category two offense, other than a violation of section 2905.01 of the Revised Code, the child was sixteen years of age or older at the time of the commission of the act charged, and either or both of the following apply:

. . .

(b) The child is alleged to have had a firearm on or about the child's person or under the child's control while committing the act charged and to have displayed the firearm, brandished the firearm, indicated possession of the firearm, or used the firearm to facilitate the commission of the act charged.

{¶ 39} Therefore, "transfer of a juvenile to adult court is mandatory when three elements are met: (1) the juvenile is 16 years old at the time of the crime, (2) there is probable cause to believe the juvenile committed a category-two offense, and (3) there is probable cause to believe that the juvenile displayed, brandished, indicated possession, or used a firearm to commit the offense." *In re J.W.* at ¶ 19 citing R.C. 2152.10(A)(2)(b).

{¶ 40} In this case, Dobson stipulated to his date of birth, thereby establishing that he was 16 years old at the time the alleged offenses were committed. (Juv. tr. 11.) Further, he was charged with three counts of aggravated robbery in violation of R.C. 2911.01(A) with one- and three-year firearm specifications. Aggravated robbery is a category-two offense. R.C. 2152.02(BB)(1). Finally, the complaint alleged that Dobson possessed a firearm during the

commission of the offenses. Therefore, a mandatory-bindover proceeding was required under R.C. 2152.10(A)(2)(b). *State v. Aalim*, 2017-Ohio-2956, ¶ 13.

{¶ 41} "To establish probable cause in a bindover proceeding, the State must present credible evidence supporting each element of the alleged offense." *In re J.W.* at ¶ 21, citing *State v. Iacona*, 93 Ohio St.3d 83, 93 (2001). "[P]robable cause exists when the facts and circumstances are sufficient to provide a reasonable belief that the accused has committed a crime." *State v. Martin*, 2022-Ohio-4175, ¶ 17. "Probable cause requires 'more than bare suspicion'"; "[t]he circumstances must demonstrate a 'fair probability' that a crime has been committed." *Id.* at ¶ 18, quoting *Brinegar v. United States*, 338 U.S. 160, 175 (1949), and *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Thus, probable cause requires "credible evidence that 'raises more than a mere suspicion of guilt'" but does not require evidence of guilt beyond a reasonable doubt. *In re D.M.*, 2014-Ohio-3628, ¶ 10, quoting *Iacona* at *id.*

{¶ 42} "[T]he juvenile court's role in a mandatory-bindover proceeding is that of a gatekeeper because it is 'charged with evaluating whether sufficient credible evidence exists to warrant going forward with a prosecution on a charge that the legislature has determined triggers a mandatory transfer of jurisdiction to adult court.'" *In re A.J.S.*, 2008-Ohio-5307, at ¶ 46, quoting *In re A.J.S.*, 2007-Ohio-3216, ¶ 22 (10th Dist.). Accordingly, "the juvenile court's role in the bindover hearing is that of a gatekeeper as opposed to the ultimate trier of fact." *In re A.J.S.*, 2008-Ohio-5307, at ¶ 31.

{¶ 43} Further, "[a] probable-cause hearing is a preliminary, non-adjudicatory proceeding wherein the court's function is not to determine guilt, but rather whether there is probable cause to believe the juvenile committed the alleged acts." *In re B.A.T.*, 2023-Ohio-3366, ¶ 24 (8th Dist.), citing *In re J.R.*, 2021-Ohio-2272, ¶ 37 (8th Dist.). "Because a probable-cause hearing is non-adjudicatory, the evidence presented at the hearing does not need to meet the same standards as those for admissibility at trial." *Id.* citing *id.* at ¶ 37. In fact, this court has stated that "[c]onfrontation clause standards for the admissibility of evidence and the Ohio Rules of Evidence do not apply to probable-cause hearings." *In re J.R.* at ¶ 37.

{¶ 44} With the foregoing law in mind, we review the evidence presented during the bindover hearing to determine whether the State presented sufficient credible evidence that Dobson participated in three aggravated robberies, including the alleged aggravated robbery at the basketball court on April 15, 2024, and the two alleged aggravated robberies of the brothers on April 25, 2024.

{¶ 45} Aggravated robbery under R.C. 2911.01(A) states that no person while attempting or committing a theft offense or in fleeing immediately after the attempt shall have a deadly weapon on or about the offender's person or under his control and either display the weapon, brandish it, indicate that he possesses it, or use it.

{¶ 46} At the probable-cause hearing, the State offered testimony from five detectives, as well as multiple videos, photographs, and social media posts, to establish the elements of the alleged offenses. Each detective testified to their investigations, as well as a summary of each alleged victim's statements. As stated

previously, the Ohio Rules of Evidence do not apply to probable-cause hearings; therefore, hearsay evidence is admissible in a probable-cause hearing. As a result, the juvenile court did not err by relying on the detectives' testimony, much of which was hearsay.

{¶ 47} As it pertains to the alleged aggravated robbery at the basketball court on April 15, 2024, Dobson argues that the State relied on hearsay evidence and that at best the evidence suggested that Dobson was complicit. We disagree.

{¶ 48} Det. Harrigan described the video evidence that captured the basketball court shooting. (Juv. tr. 117 and State's Juv. exhibit No. 1.)[2] The video depicts seven individuals walking onto the court. (Juv. tr. 117 and State's Juv. exhibit No. 1.) All seven are wearing dark-colored hooded sweatshirts, except Crosby who is wearing a brown-colored hooded sweatshirt. (Juv. tr. 117.) All seven have their hoods up, and all seven have black masks covering half their faces.

{¶ 49} Det. Harrigan testified that during an interview with police, Dobson identified himself from a still photo taken from the video. (Juv. tr. 118.) Dobson is wearing the 23 sweatshirt, which he was also wearing in an Instagram live video two days early where he displayed a firearm. (Juv. tr. 98, 119.)

{¶ 50} Also, notable in the basketball court video are Dobson's black shoes with red accents that are unique to him and identifiable through both angles of the videos. (State's Juv. exhibit No. 1.) After a few minutes, the seven individuals leave

---

[2] State's Juv. exhibit No. 1 coincides with State's exhibit Nos. 471 and 472, which depict both angles of the basketball court shooting.

the court and approach a person. Parker is the first to pull his firearm out of the backpack that he is wearing on the front of him. (Juv. tr. 120.) Dobson can be observed pointing his gun at the person's head as two others grabbed the person and appeared to be rifling through his pockets. (State's Juv. exhibit No. 1.) Dobson closes the two-foot gap and puts the gun to the back of the person's head. (State's Juv. exhibit No. 1.) Someone starts shooting and gun fire is exchanged while everyone scatters. (Juv. tr. 120 and State's Juv. exhibit No. 1.) As they flee the area, Dobson and Crosby trip over each other and they both fall to the ground next to the bleachers on the basketball court. (Juv. tr. 118 and State's Juv. exhibit No. 1.) The video evidence clearly shows both Crosby and Dobson with guns, and Dobson can be seen pointing his weapon in the direction of several homes. (State's Juv. exhibit No. 1.) Both Dobson and Crosby, along with a third person, appear to be firing their weapons. (State's Juv. exhibit No. 1.)

{¶ 51} As stated previously, the trial court is tasked with determining whether there is probable cause to believe that Dobson displayed, brandished, indicated possession, or used a firearm to commit the offense. Probable cause does not require evidence of guilt beyond a reasonable doubt; rather it requires credible evidence that raises more than a mere suspicion of guilt. Based on the testimony of Det. Harrigan and State's Juv. exhibit No. 1, we find that there was sufficient credible evidence that Dobson participated in the alleged aggravated robbery at the basketball court and was in possession of a firearm and used the firearm during the incident. Therefore,

the juvenile court's finding of probable cause as to the basketball court shooting was proper.

{¶ 52} As it pertains to the alleged aggravated robbery of the two brothers that occurred on April 25, 2024, Dobson argues that there is no evidence that he had a firearm. He contends that the evidence included inconsistent hearsay when Cleveland Police Detective Scott Carey ("Det. Carey") testified that the brothers indicated that there were four individuals with guns involved in the robbery; however, only three individuals bailed from the vehicle and only three guns were recovered. Therefore, Dobson contends there is no evidence he had a firearm. Again, we disagree.

{¶ 53} Det. Carey testified that the brothers were contacted by an individual to purchase a quarter pound of marijuana. (Juv. tr. 59.) The parties met. There were four people in a silver Kia, one person exited the Kia and brother one entered the Kia to make the transaction. The person who exited the Kia entered the brother's vehicle and started searching the car. (Juv. tr. 60.) He then pulled out a gun and pointed it at brother two. At the same time, the three people in the silver Kia, pointed guns at brother one and took the marijuana. The three fled and the brothers flagged down officers who were already watching for the silver Kia, which had been stolen the previous day. (Juv. tr. 60.)

{¶ 54} Video evidence captured the police chase and the silver Kia clipping a dump truck and crashing. (State's Juv. exhibit No. 20.) One person, who was identified as Dobson, fell out of the silver Kia as it crashed. (Juv. tr. 64.) Dobson

stood up and ran but was quickly caught by police. (Juv. tr. 63.) Two other people can be observed exiting the vehicle and fleeing. Parker was also caught at this time. Although a firearm was not recovered from Dobson's person, three loaded firearms were recovered from the scene — one from the front passenger seat of the silver Kia, one fell out of the vehicle when the three fled, and one was located 15 feet from the vehicle. (Juv. tr. 77-78.) Additionally, Det. Harrigan testified that the shell casings that were recovered from the basketball court shooting matched one of the firearms recovered near the silver Kia. (Juv. tr. 136-137.)

{¶ 55} Again, the juvenile court is tasked with determining whether there is probable cause to believe that Dobson displayed, brandished, indicated possession, or used a firearm to commit the offense. Probable cause does not require evidence of guilt beyond a reasonable doubt; rather it requires credible evidence that raises more than a mere suspicion of guilt. Furthermore, the elements of an offense may be proven by direct or circumstantial evidence. *State v. Wingfield*, 2019-Ohio-1644, ¶ 51 (8th Dist.). Direct evidence exists when "a witness testifies about a matter within the witness's personal knowledge such that the trier of fact is not required to draw an inference from the evidence to the proposition that it is offered to establish." *State v. Cassano*, 2012-Ohio-4047, ¶ 13 (8th Dist.). Circumstantial evidence is evidence that requires "the drawing of inferences that are reasonably permitted by the evidence." *Id*. Direct and circumstantial evidence are of equal evidentiary value. *State v. Santiago*, 2011-Ohio-1691, ¶ 12 (8th Dist.).

{¶ 56} At the probable cause hearing, the detective testified that the brothers met with four people in a silver Kia to sell marijuana. Brother one stated that three people in the silver Kia pointed guns at his head. This happened while a fourth individual was pointing a gun at brother two and searching through the brothers' vehicle. The silver Kia fled the scene with at least three people in the vehicle. The video evidence showed that when the silver Kia crashed, within minutes of the robbery, three people bailed from the vehicle and fled. Dobson was identified as one of the three people. And three firearms were recovered in and near the silver Kia. Although there was no direct testimony that Dobson had a gun, we find that there was sufficient credible, circumstantial evidence that Dobson was one of the people in the silver Kia who pointed a gun at brother one while they stole the marijuana from the brothers.

{¶ 57} Furthermore, there was sufficient, credible evidence that Dobson put a gun to the individual's head at the basketball court while two others tried to take something from him. Because there was sufficient, credible evidence to conclude that Dobson committed three aggravated robberies with a firearm and that Dobson was 16 years old at the time of the offenses, the trial court was required to transfer Dobson to General Division pursuant R.C. 2152.10(A)(2)(b). In other words, it was mandatory not discretionary.

{¶ 58} Accordingly, Dobson's second assignment of error is overruled.

## B. Jury Instructions

{¶ 59} In Dobson's fourth assignment of error, he argues that the trial court committed plain error by failing to instruct the jury that a conviction for participating in a criminal gang requires more than passive or nominal involvement. He asserts that an instruction on the active participation element of the statute for participating in a criminal gang should have been given.

{¶ 60} We note that Dobson did not object to the jury instructions and Crim.R. 30(A) states that "a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection." Nevertheless, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). Because Dobson did not request the specific jury instruction regarding active participation, nor did he object to the jury instructions, we review for plain error.

{¶ 61} Plain error is an obvious error or defect in the trial court proceedings that affects a substantial right. *State v. Rogers*, 2015-Ohio-2459, ¶ 22. Plain error requires a showing that there was an error, that the error was plain or obvious, and that but for the error the outcome of the proceeding would have been different and that reversal is necessary to correct a manifest miscarriage of justice. *State v. Buttery*, 2020-Ohio-2998, ¶ 7, citing *State v. Quarterman*, 2014-Ohio-4034, ¶ 16. The party asserting plain error "bears the burden of proof to demonstrate plain error on the record." *Rogers* at ¶ 22, citing *Quarterman* at ¶ 16.

{¶ 62} Generally, a defendant is entitled to have the jury instructed on all elements of a crime that must be proved; however, the failure to do so is not necessarily reversible as plain error. *State v. Nicholson*, 2022-Ohio-374, ¶ 39 (8th Dist.), citing *State v. Wamsley*, 2008-Ohio-1195, ¶ 17. "'Rather, an appellate court must review the instructions as a whole and the entire record to determine whether a manifest miscarriage of justice has occurred as a result of the error in the instructions.'" *Id.*, quoting *id.*

{¶ 63} In this case, Dobson was charged with and convicted of participating in a criminal gang under R.C. 2923.42(A), which states that

> [n]o person who *actively* participates in a criminal gang, with knowledge that the criminal gang engages in or has engaged in a pattern of criminal gang activity, shall purposely promote, further, or assist any criminal conduct as defined in [R.C. 2923.41(C)], or shall purposely commit or engage in any act that constitutes criminal conduct as defined in [R.C. 2923.41].

(Emphasis added.)

{¶ 64} This court has previously observed that under this statutory section, the State must prove the following elements: "'(1) the existence of a criminal gang, (2) appellant's active participation in the gang, (3) appellant's knowledge that the gang engages in or has engaged in a pattern of criminal gang activity, and (4) appellant's purposeful promotion, furtherance, or assistance of or engagement in, any criminal conduct.'" *Nicholson* at ¶ 20, quoting *State v. Roberson*, 2017-Ohio-4339, ¶ 72 (6th Dist.).

{¶ 65} In this case, the trial court advised the jury that

[b]efore you can find [Dobson] guilty, you must find beyond a reasonable doubt that on or about January 1, 2024, through May 20, 2024, and in Cuyahoga County, Ohio, [Dobson] did actively participate in a criminal gang with knowledge that the criminal gang engages in or had engaged in a pattern of criminal gang *activity* and did purposely promote, further, or assist in any criminal conduct, or did purposely commit or engage in any act that constituted criminal conduct.

(Emphasis added.) (Tr. 2085.) The trial court defined criminal gang, pattern of activity, criminal conduct, juvenile, knowledge, purpose, and conduct in accordance with R.C. 2923.42(A). In addition, the trial court advised the jury regarding all of the crimes charged in the indictment and the elements.

{¶ 66} Dobson complains that "actively participates" was not defined arguing that "[a] jury instruction is proper where '(1) the instruction is relevant to the facts of the case; (2) the instruction gives a correct statement of the relevant law; and (3) the instruction is not covered in the general charge to the jury.'" *State v. Walker*, 2012-Ohio-4274, ¶ 53 (8th Dist.), quoting *State v. Kovacic*, 2012-Ohio-219, ¶ 15 (11th Dist.) He claims that by not defining "actively participates" the jury was "essentially allowed to convict him, regardless of his participation, so long as the State proved that he was a member of the gang." (Dobson's brief, p. 23.) We find Dobson's argument unpersuasive.

{¶ 67} Although "actively participates" is not defined by statute, it is well established that terms of common usage need not be defined for the jury. *State v. Johnson*, 2002-Ohio-7057, ¶ 74 (8th Dist.), citing *State v. Gross*, 2002-Ohio-5524, ¶ 74. "'Common words shall be read in context and defined according to common usage.'" *State v. Petty*, 2012-Ohio-2989, ¶ 16 (10th Dist.), quoting *State v. Mitchell*,

1995 Ohio App. LEXIS 1225 (6th Dist. Mar. 31, 1995), citing R.C. 1.42. "Absent some special meaning, no specific definition is necessary in instructions." *Id.,* quoting *id*. Moreover, "[w]e presume that the jury can understand phrases expressed in plain English or that the jury will inquire as to the meaning of the phrase." *State v. Brooks*, 2008-Ohio-1726, ¶ 29 (10th Dist.). Accordingly, if a "'term is one of common usage and is actually used in that sense, the failure to define the term does not mandate a reversal.'" *State v. Walburg*, 2011-Ohio-4762, ¶ 48, quoting *State v. Watkins*, 2002-Ohio-5080, ¶ 39 (10th Dist.).

{¶ 68} Indeed, "[t]he common and ordinary meaning of 'active' is 'actual, not just nominal. *Webster's New World College Dictionary* 14 (4th Ed.2008). 'Participate' is 'to have or take a part or share with others (in some activity, enterprise, etc.).' *Id.* at 1050." *State v. Smith*, 2017-Ohio-776, ¶ 38. "Thus, the active participation element of the criminal gang statute requires the state demonstrate that appellant actually — not just nominally — took part in the criminal gang." *Id.*

{¶ 69} Our review of this matter shows that the trial court properly instructed the jury on the statutory elements of participating in a criminal gang under R.C. 2923.42(A). Although Dobson contends that the trial court should have defined "active participation," he provides no authority to demonstrate such an instruction was warranted. Additionally, the jury could have inquired as to the definition of active participation but did not. Consequently, we find that "active participation" is a term of common usage, which does not require a specific

instruction. Therefore, the trial court did not err by failing to define "active participation."

{¶ 70} Finally, Dobson fails to demonstrate that the claimed error was obvious or that it affected the outcome of trial. The evidence at trial demonstrated that Dobson was a member of the 237 gang and that he actively participated in the gang by displaying gang signs and symbols on social media, as well as committing several shootings and robberies with his fellow gang members. Therefore, after careful review of the instructions as a whole and the entire record in this case, we do not find any manifest miscarriage of justice occurred.

{¶ 71} Accordingly, Dobson's fourth assignment of error is overruled.

## C. Sufficiency

{¶ 72} In Dobson's fifth assignment of error he contends that his convictions for participating in a criminal gang and aggravated robbery with the accompanying firearm specifications are not supported by sufficient evidence.

{¶ 73} The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 2009-Ohio-3598, ¶ 12 (8th Dist.). In determining whether the evidence is legally sufficient to support the jury verdict as a matter of law, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307 (1979).

## 1. Participation in a Criminal Gang

{¶ 74} Dobson was charged with and convicted of participating in a criminal gang in violation of R.C. 2923.42(A), which was defined in the previous assignment of error. Nevertheless, we reiterate that this court has previously observed that under this statutory section, the State must prove the following elements: "'(1) the existence of a criminal gang, (2) appellant's active participation in the gang, (3) appellant's knowledge that the gang engages in or has engaged in a pattern of criminal gang activity, and (4) appellant's purposeful promotion, furtherance, or assistance of or engagement in, any criminal conduct.'" *Nicholson*, 2022-Ohio-374, ¶ 20 (8th Dist.), quoting *State v. Roberson*, 2017-Ohio-4339, ¶ 72 (6th Dist.).

{¶ 75} Dobson argues that the State failed to establish a nexus between Dobson's active participation in the gang and the gang benefiting from his participation. He claims that the facts in his case are analogous to the facts in *Roberson*, supra.

{¶ 76} In *Roberson*, the defendant was convicted of one count of aggravated burglary and one count of rape involving a woman that he met a few times, and one count of aggravated burglary and one count of domestic violence involving a woman with whom he shared a child. *Id.* at ¶ 2. In addition, he was convicted of participating in a criminal gang based on social media posts, hand signals, and Roberson's own admissions. *Id.* The appellate court reasoned that although the State proved that Roberson was a member of the Bee-Hive gang, the State did not present sufficient evidence that the burglaries and rape Roberson committed

benefitted the gang in any way and there was no evidence that any gang members were involved in either incident. *Id.* at ¶ 81.

{¶ 77} Unlike the facts in *Roberson*, all of Dobson's criminal activity involved members of the 237 gang. None of Dobson's criminal activity was committed solo like Roberson. Every social media post, every shooting, and every robbery included members of the 237 gang. In addition, members shared clothing, music, a cash app as well as stolen vehicles, and firearms, all of which furthered their criminal activity.

{¶ 78} Therefore, when viewing the evidence in a light most favorable to the State, we find that any rational trier of fact could have found the essential elements of criminal gang activity proven beyond a reasonable doubt.

## 2. Aggravated Robbery with a Firearm

{¶ 79} Next, Dobson argues that there was insufficient evidence that he was in possession of a firearm during the aggravated robbery of the two brothers. We disagree.

{¶ 80} In this case, Dobson was charged with and convicted of the one- and three-year firearm specifications as it pertains to the aggravated robbery of the brothers set forth in Counts 52 and 56. The one-year firearm specification states that "the offender had a firearm on or about the offender's person or under the offender's control while committing the offense." R.C. 2941.141(A). The three-year firearm specification states that "the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and

displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense." R.C. 2941.145.

{¶ 81} At trial, brother one testified that when he entered the silver Kia to conduct the drug deal, he sat in the front passenger seat. He then felt three guns to the back of his head. The masked people demanded his phone, the marijuana, and his sweatshirt. Brother one described three firearms. After the robbery, the silver Kia fled the scene. While being chased by Cleveland police, the silver Kia hit a dump truck causing it to crash. From the video evidence, Dobson can be observed falling out of the back passenger door behind the driver's seat. Two others can be observed fleeing the vehicle. After a short foot pursuit, Dobson was arrested. Three firearms were recovered from the scene. These firearms match brother one's description of the firearms — one Glock handgun with a drum magazine, one Glock handgun with an extended magazine, and one ARP.

{¶ 82} When viewing the evidence in a light most favorable to the State, we find that any rational trier of fact could have found the essential elements of possession of a firearm during the commission of the robbery of the brothers proven beyond a reasonable doubt.

{¶ 83} Accordingly, Dobson's fifth assignment of error is overruled.

### D. Manifest Weight of the Evidence

{¶ 84} In Dobson's sixth assignment of error, he argues that the jury clearly lost its way because the State overwhelmed the jury with testimony about crimes that were ultimately dismissed at the Crim.R. 29 hearing and presented confusing

and conflicting testimony about the robbery of the two brothers. Therefore, Dobson contends that his convictions for participating in a criminal gang and aggravated robbery are against the manifest weight of the evidence.

{¶ 85} While the test for sufficiency requires a determination of whether the prosecution has met its burden of production at trial, a manifest-weight challenge questions whether the prosecution has met its burden of persuasion. *Bowden,* 2009-Ohio-3598, ¶ 12 (8th Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Recently, in *State v. Reillo*, the Ohio Supreme Court reiterated that

> "[w]eight of the evidence concerns 'the inclination of *the greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief*.'"

(Emphasis added in *Thompkins*.) *Reillo*, 2026-Ohio-2701, ¶ 25, quoting *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 12, quoting *Thompkins* at ¶ 24, quoting *Black's Law Dictionary* (6th Ed. 1990).

{¶ 86} The *Reillo* Court went on to say that

> under a manifest-weight review, a court ""'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" "*Brown*, 2025-Ohio-2804, at ¶ 30, quoting *Thompkins* at ¶ 25, quoting *State v. Martin*, 20 Ohio App.3d 172 (1st Dist. 1983), paragraph three of the syllabus.

> However, appellate courts may "vacate a jury's verdict and order a new trial "'only in the exceptional case in which the evidence weighs heavily

against the conviction.”’” *Id.* at ¶ 31, quoting *Thompkins*, 1997-Ohio-52, at ¶ 25, quoting *Martin* at 175. In such cases, the court sits as a “‘“thirteenth juror”’” who may disagree with the fact-finder’s resolution of the *conflicting evidence*.” (Emphasis added.) *State v. Martin*, 2022-Ohio-4175, ¶ 26, quoting *Thompkins* at ¶ 25, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982).

But “[i]n weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact.” *Eastley*, 2012-Ohio-2179, at ¶ 21. “‘“If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.”’” “[*In* re] Z.*C.*, 2023-Ohio-4703, at ¶ 14, quoting *Seasons Coal Co.*, 10 Ohio St.3d at 80, fn. 3, quoting 5 Ohio Jur.3d, Appellate Review, § 603, at 191-192 (1978). “‘“The underlying rationale of giving deference to the findings of the [fact-finder] rests with the knowledge that the [fact-finder] is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.”’” *Id.*, quoting *Seasons Coal* at 80.

*Id.* at ¶ 26-28.

### 1. Participating in a Criminal Gang

{¶ 87} R.C. 2923.41(A) defines “criminal gang” as an ongoing formal or informal organization, association, or group of three or more persons to which all of the following apply:

(1) It has as one of its primary activities the commission of one or more of the offenses listed in division (B) of this section [which includes acts of violence, as well as felonies].

(2) It has a common name or one or more common, identifying signs, symbols, or colors.

(3) The persons in the organization, association, or group individually or collectively engage in or have engaged in a pattern of criminal gang activity.

{¶ 88} R.C. 2923.41(B) defines a “pattern of criminal gang activity” as

persons in the criminal gang have committed, attempted to commit, conspired to commit, been complicitors in the commission of, or solicited, coerced, or intimidated another to commit, or be in complicity in the commission of two or more of any of the following offenses:

(a) A felony or an act committed by a juvenile that would be a felony if committed by an adult;

(b) An offense of violence or an act committed by a juvenile that would be an offense of violence if committed by an adult.

{¶ 89} Furthermore, there is a "pattern" of criminal activity regarding the specified offenses when at least one of the two or more specified offenses is a felony, at least one of the offenses occurred on or after January 1, 1999, the most recent of the offenses occurred within five years of another of the specified offenses, and the specified offenses are committed on separate occasions by two or more persons. R.C. 2923.41(B)(2).

{¶ 90} In this case, there is ample evidence that Dobson participated in the 237 gang, as well as the aggravated robbery of the two brothers, despite the dismissed counts, which may be considered by the jury as it pertains to the elements of criminal gang activity.

{¶ 91} The evidence at trial demonstrated that there are a group of individuals who identified themselves as belonging to the 237 gang, which included Dobson. One of the group's primary activities was acts of violence and the commission of felonies, including robberies and shootings. These individuals used common emojis and hand signals that were exclusive to the gang.

{¶ 92} The evidence also demonstrated that Dobson was an active participant in the gang when he engaged in group chats, videos, live streams, and other social media interactions. Social media posts showed Dobson brandishing weapons and using the symbols and numbers, as well as the cash app account associated with the 237 gang. He was pictured in several social media posts with individuals also identified as 237 gang members. Dobson also identified himself as being involved in the basketball court shooting that involved six other members of 237. Further, Dobson was arrested immediately following the aggravated robbery of the brothers a short distance from the stolen silver Kia that he fell out of when it crashed.

{¶ 93} In addition, shell casings from the shooting where a person was shot in the ear, the shooting where the boyfriend lost his eye, and the basketball court shooting matched the firearms recovered near the silver Kia, which demonstrates that the firearms were being passed amongst fellow gang members. Further, Dobson's DNA was recovered from two stolen vehicles involved in criminal activity, including the shooting where boyfriend lost his eye and the robbery of the two brothers, which demonstrates that the vehicles were passed between gang members.

{¶ 94} After a thorough review of the record, we cannot say that the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction for criminal gang activity must be reversed, and a new trial ordered.

## 2. Aggravated Robbery

{¶ 95} As it pertains to the aggravated robbery of the brothers, we find there was circumstantial evidence that Dobson possessed a firearm in the commission of the aggravated robbery. Specifically, brother one testified that he felt three guns to the back of his head during the robbery that took place in the silver Kia. Immediately after the aggravated robbery, the silver Kia fled the scene. Within minutes, the silver Kia was captured on video clipping a dump truck and crashing. Dobson can be observed falling out of the backseat of the silver Kia when it crashed. Det. McCandless testified that he observed the crash, as well as two Glock 23's on St. Clair Avenue that were discarded when Dobson, Parker, and another person exited the silver Kia. The long gun (ARP) was observed in the silver Kia. Dobson was arrested by police along with Parker after a short foot pursuit. One person got away. The firearms recovered matched the description of the guns used in the aggravated robbery of the brothers.

{¶ 96} Although Dobson argues that there was conflicting testimony regarding this aggravated robbery, "there must be something more than a mere inconsistency, though, because appellate courts must give deference to fact-finders." *Reillo*, 2026-Ohio-2701, at ¶ 32. Any inconsistencies in the testimony of the brothers "was not so inconsistent as to material facts, so impeached, or so fantastical as to render it patently unbelievable." *Id*. at ¶ 32.

{¶ 97} Therefore, after a thorough review of the record, we cannot say that the jury clearly lost its way and created such a manifest miscarriage of justice that

the conviction for aggravated robbery with the attendant one- and three-year firearm specifications must be reversed, and a new trial ordered. Therefore, we find that Dobson's convictions for criminal gang activity and aggravated robbery are not against the manifest weight of the evidence.

{¶ 98} Accordingly, Dobson's sixth assignment of error is overruled.

### E. Jury Interrogatory and Reverse Bindover

{¶ 99} In Dobson's third assignment of error, he argues that the trial court erred when his motion for reverse bindover was denied and "when the court refused to facilitate a jury questionnaire, interrogatory, or furthermore to determine facts that would allow the reverse bindover." (Dobson's brief, p. 18.) He insists that a jury interrogatory was required to determine whether Dobson was in actual possession of a firearm during the aggravated robbery of the brothers because if Dobson's convictions were based solely on complicity, then the trial court was required to return the case to juvenile court for sentencing.

{¶ 100} The State argues that a separate jury interrogatory was unnecessary because the jury made a separate and affirmative finding of guilt on the firearm specifications for each aggravated-robbery conviction. The State further contends that when a defendant is convicted of a mandatory-bindover offense, R.C. 2152.121, the reverse bindover statute, does not apply.

### 1. Jury Interrogatory

{¶ 101} With regards to Dobson's argument that a jury interrogatory was necessary, we note that "[a]ppellate courts review a trial court's decision to provide,

or to not provide, specific jury instructions under an abuse-of-discretion standard." *State v. Watson*, 2026-Ohio-188, ¶ 40 (8th Dist.), citing *State v. Guster*, 66 Ohio St. 2d 266, 271 (1981). Trial courts, on the other hand, are required to "'fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder.'" *Id.*, quoting *State v. Comen*, 50 Ohio St. 3d 206, 210 (1990).

{¶ 102} In *State v. Hanning*, 89 Ohio St.3d 86 (2000), the Ohio Supreme Court addressed whether a juvenile could be bound over when only the accomplice possessed a firearm. The Hanning Court answered the question in the negative and noted that

> [a] plain reading of both statutes does not permit this court to apply the complicity concept of R.C. 2923.03 to the bindover proceedings of [former] R.C. 2151.263 [now R.C. 2151.121] because the bindover statute itself does not provide that a child can be bound over based on the fact that a firearm was used by an accomplice. If the General Assembly had intended for a mandatory bindover to occur whenever, as here, an accomplice of the juvenile used a firearm in committing the crime charged, it could have drafted the statute to expressly so provide.

*Id.* at 91. The Court concluded that while Hanning's accomplice possessed a firearm, Hanning only possessed a plastic pellet gun; therefore, Hanning's bindover was not mandatory. *Id.* at 93. Nevertheless, the Court explained that although Hanning was not subject to mandatory bindover, this did not preclude the State from moving for discretionary bindover proceedings. Based on the holding in *Hanning*, we agree with Dobson that the law regarding complicity and mandatory bindover is clear, an

accomplice's possession of a firearm is not sufficient for a mandatory bindover. Nevertheless, this is not the situation in Dobson's case.

**{¶ 103}** In this case, Dobson was charged with and convicted of the one- and three-year firearm specifications as it pertains to the aggravated robbery of the brothers set forth in Counts 52 and 56. As stated previously, the one-year firearm specification states that "the offender had a firearm on or about the offender's person or under the offender's control while committing the offense." R.C. 2941.141(A). The three-year firearm specification states that "the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense." R.C. 2941.145.

**{¶ 104}** The trial court used the standard Ohio Jury Instructions to define all general terms, the elements of each crime, as well as the elements required for the State to prove each of the firearm specifications.

**{¶ 105}** As it pertains to possession of a firearm, the trial court stated:

> On or about his person or under his control. On or about his person or under his control means that the firearm was on the Defendant's person or so near the Defendant as to be conveniently accessible and within the Defendant's immediate physical reach.
>
> . . .
>
> Brandish. To brandish means to waive menacingly or so as to challenge, to flourish. Possession. Possession is a voluntary act that the possessor knowingly procured or received the firearm or was aware of his control thereof for a sufficient period of time to have ended his possession. A person has possession when he knows that he has the

object on or about his person or places where it is accessible to his use or direction and he has the ability to direct or control its use.

Joint possession. Two or more persons may have possession if together they have the ability to control it, exclusive of others. Ownership. Ownership is not necessary. Person may possess or own property belonging to another.

(Tr. 2092-2095.) In addition, the jury verdict forms required the jury to specifically decide whether the State proved that Dobson possessed a firearm.

{¶ 106} In a somewhat similar case, *State v. Wells*, 2019-Ohio-3605 (6th Dist.), the appellate court reversed the trial court's decision denying Wells's reverse-bindover motion. Wells, a juvenile, was bound over to adult court for murder and aggravated robbery in connection with the shooting death of a marijuana dealer. *Id.* at ¶ 9. Wells was found guilty of aggravated robbery; however, the jury acquitted Wells of the murder charge, as well as the attendant firearm specification related to the aggravated robbery. *Id.* at ¶ 11. At the sentencing hearing, Wells argued that he was eligible to return to juvenile court for sentencing because the jury made the affirmative finding that Wells *did not* have a firearm. *Id.* at ¶ 12. The prosecutor argued that although complicity was included in the jury instructions, Wells was charged as the principal offender and was found guilty of aggravated robbery, a crime that includes use of a deadly weapon. The trial court agreed with the prosecutor, and Wells's motion for reverse-bindover was denied and the trial court sentenced Wells as an adult. *Id.* at ¶ 13.

{¶ 107} On appeal, the Sixth Appellate District reversed the trial court's decision citing the Ohio Supreme Court's decision in *Hanning*, 89 Ohio St. 3d at 91,

which clearly stated that an accomplice's possession of a firearm was incompatible with the bindover statute. *Wells* at ¶ 20. In other words, a juvenile is not subject to mandatory bindover unless the juvenile did, in fact, possess a firearm. Therefore, the *Wells* Court concluded that Wells was entitled to a hearing pursuant to R.C. 2152.121(B)(3), the reverse bindover statute, because the jury concluded that Wells did not possess a firearm in commission of the aggravated robbery. *Id*. at ¶ 23.

{¶ 108} The State argues that the facts in Dobson's case are distinguishable from *Wells* because in Dobson's case the jury affirmatively concluded that Dobson did, in fact, have a firearm in commission of the aggravated robbery of the brothers. Therefore, the Dobson was not entitled to a reverse bindover proceeding. We agree.

{¶ 109} In this case, the trial court read the verdict forms, which stated that "the State *did* prove that [Dobson] had a firearm on or about his person or under his control while committing this offense [both aggravated robberies] and displayed the firearm, brandished it, indicated he possessed it, and used it to facilitate the offense." (Emphasis added.) (Tr. 2174-2175, 2176.) Furthermore, Dobson cites no caselaw to support his position that a furthermore finding or jury interrogatory is required to determine whether the jury believed Dobson actually possessed a firearm. Moreover, this court has stated that """on or about his person or under his control" *or actual possession* "means that 'the firearm was either carried on the defendant's person or was so near the defendant's person as to be conveniently accessible and within his immediate physical reach.'"" (Emphasis added.) *State v. Carson*, 2017-Ohio-7243, ¶ 15 (8th Dist.), quoting *State v. Smith*, 2010-Ohio-4006, ¶ 11 (8th Dist.),

quoting 2 *Ohio Jury Instructions*, CR § 127 (2008); 3 *Ohio Jury Instructions*, CR § 541.141 (Rev. Oct. 3, 2015); *State v. Giguere*, 2023-Ohio-4649, ¶ 18 (8th Dist.). In other words, an affirmative finding on a firearm specification is a finding of actual possession.

{¶ 110} Based on the foregoing, we find that the standard jury instructions, as well as the jury verdict forms, were sufficient to fully and completely give the jury all instructions that were relevant and necessary for the jury to weigh the evidence and discharge its duty as the factfinder. Thus, the trial court did not abuse its discretion by denying Dobson's request for a jury interrogatory or furthermore finding.

### 2. Reverse Bindover

{¶ 111} Having determined that a separate jury interrogatory was unnecessary we turn now to Dobson's argument that he was entitled to a reverse bindover. Reverse bindovers occur in cases where juveniles who were transferred to adult court are subsequently convicted of, or pleaded guilty to, offenses that would not have qualified for mandatory or discretionary transfer to adult court in the first instance. The process of reverse bindover is governed by R.C. 2152.121, which states, in relevant part:

> (B) If a complaint is filed against a child alleging that the child is a delinquent child, if the case is transferred pursuant to division (A)(1)(a)(i) or (A)(1)(b)(ii) of section 2152.12 of the Revised Code, and if the child subsequently is convicted of or pleads guilty to one or more offenses in that case, the sentence to be imposed or disposition to be made of the child with respect to each of the offenses shall be determined as follows:

(1) The court in which the child is convicted of or pleads guilty to the offenses shall determine whether, had a complaint been filed in juvenile court alleging that the child was a delinquent child for committing an act that would be any of the offenses if committed by an adult, division (A) of section 2152.12 of the Revised Code would have required mandatory transfer of the case or division (B) of that section would have allowed discretionary transfer of the case. The court shall not consider the factor specified in division (B)(3) of section 2152.12 of the Revised Code in making its determination under this division.

* * *

(3) If the court in which the child is convicted of or pleads guilty to the offenses determines under division (B)(1) of this section that, had a complaint been filed in juvenile court alleging that the child was a delinquent child for committing an act that would be any of the offenses if committed by an adult, division (A) of section 2152.12 of the Revised Code would not have required mandatory transfer of the case but division (B) of that section would have allowed discretionary transfer of the case, the court shall determine the sentence it believes should be imposed on the child under Chapter 2929. of the Revised Code for each of the offenses, shall impose that sentence on the child, and shall stay that sentence pending completion of the procedures specified in this division. Upon imposition and staying of the sentence, the court shall transfer jurisdiction of the case back to the juvenile court that initially transferred the case and the juvenile court shall proceed in accordance with this division. In no case may the child waive a right to a hearing of the type described in division (B)(3)(b) of this section, regarding a motion filed as described in that division by the prosecuting attorney in the case.

{¶ 112} R.C. 2152.121(B) requires the court to first determine whether what the juvenile pleaded guilty to, or was found guilty of, is subject to mandatory or discretionary transfer to the general division of the common pleas court. R.C. 2152.121(B)(3) further provides that if the juvenile is convicted of, or pleads guilty to, an offense that would have been subject to discretionary transfer, the court must impose a sentence on the child for the offense but must stay the sentence and transfer the child to the juvenile court for further proceedings outlined in

R.C. 2152.121(B)(3)(a) and (b).  Because the transfer back to the juvenile court is only required if the child is convicted of, or pleaded guilty to, an offense that would be subject to discretionary bindover, the court is not required to transfer the child to the juvenile court if the child is convicted of, or pleads guilty to, an offense subject to mandatory bindover.  In other words, if the juvenile is convicted of, or pleads guilty to, an offense subject to mandatory bindover, the court must sentence the juvenile on the offense in the same way it would sentence an adult defendant for the same offense.  Where the child is convicted of a "mandatory-bindover offense," transfer is not required.

{¶ 113} As we discussed in the second assignment of error, "transfer of a juvenile to adult court is mandatory when three elements are met:  (1) the juvenile is 16 years old at the time of the crime, (2) there is probable cause to believe the juvenile committed a category-two offense, and (3) there is probable cause to believe that the juvenile displayed, brandished, indicated possession, or used a firearm to commit the offense."  *In re J.W.*, 2026-Ohio-1972, ¶ 19 (8th Dist.) citing R.C. 2152.10(A)(2)(b).  In this case, Dobson was 16 years old at the time of the alleged offenses.  He was found guilty of aggravated robbery in violation of R.C. 2911.01(A), which is a category-two offense.  Furthermore, he was found guilty of having a firearm on or about his person or under his control while committing the aggravated robbery and displaying the firearm, brandishing the firearm, indicating he possessed the firearm, and using the firearm to facilitate the offense.  Therefore,

all the elements necessary to establish a mandatory-bindover offense are met in this case, and the trial court properly denied Dobson's request for reverse bindover.

{¶ 114} Accordingly, Dobson's third assignment of error is overruled.

**F. Sentencing for Firearm Specifications**

{¶ 115} In Dobson's final assignment of error, he contends that the trial court erred when it concluded that it lacked jurisdiction, as well as discretion, to resentence Dobson to the one-year firearm specifications instead of the three-year firearm specifications in accordance with this court's decision in *Holliman*, 2025-Ohio-1187 (8th Dist.). The State contends that the trial court lacked jurisdiction to resentence Dobson because his case was pending on appeal and the trial court lacked discretion under R.C. 2929.14(B)(1)(g) to elect between the one- and three-year firearm specifications.

{¶ 116} Generally, a trial court lacks the authority to reconsider their own final judgments in criminal cases, and they only retain continuing jurisdiction to correct clerical errors in judgments to reflect what the court actually decided. *State v. Hearn*, 2021-Ohio-594, ¶ 10 (4th Dist.), citing *State ex rel. Wamack v. Marsh*, 2011-Ohio-229 and Crim.R. 36. Further, "'[w]hen a case has been appealed, the trial court retains all jurisdiction not inconsistent with the court of appeals' jurisdiction to reverse, modify or affirm the judgment.'" *Id.* at ¶ 10 quoting *Yee v. Erie Cty. Sheriff's Dept.*, 51 Ohio St.3d 43, 44 (1990).

{¶ 117} Here, Dobson filed his notice of appeal on March 31, 2023, then on June 16, 2025, Dobson asked the trial court to resentence him. Because his case was

pending on appeal, the trial court did not have jurisdiction to resentence Dobson, and it was not error for the trial court to deny Dobson's motion.

{¶ 118} Furthermore, Dobson's reliance on *Holliman* is misguided. In *Holliman*, this court held that because the "legislature did not insert any statutory language under either R.C. 2929.141(B) [the one-year firearm specification] or R.C. 2941.145(B) [the three-year firearm specification] to elevate the three-year sentence enhancement over the one-year sentence enhancement or to automatically except the one-year sentence enhancement in light of the three-year sentence enhancement" the trial court had discretion to choose to sentence the defendant on either the one- or three-year firearm specification. *Holliman* at ¶ 7. Nevertheless, the *Holliman* Court specifically noted that "an exception is found in R.C. 2929.14(B)(1)(g)"; but that exception was inapplicable to Holliman. *Id*. at ¶ 6. That, however, is not the case for Dobson. R.C. 2929.14(B)(1)(g) applies to Dobson.

{¶ 119} R.C. 2929.14(B)(1)(g) states in pertinent part that

> if an offender is convicted of . . . two or more felonies, if one or more of those felonies are . . . aggravated robbery, felonious assault . . . and if the offender is convicted of . . . a specification of the type described under division (B)(1)(a) of this section in connection with two or more of the felonies, the sentencing court *shall* impose on the offender the prison term specified under division (B)(1)(a) of this section for *each of the two most serious specifications* of which the offender is convicted . . . and, in its discretion, also may impose on the offender the prison term specified under that division for any or all of the remaining specifications.

(Emphasis added.) Relevant to this case is R.C. 2929.14(B)(1)(a)(i)-(iii), which defines the six-, three-, and one-year firearm specifications. Dobson was convicted

of two counts of aggravated robbery, as well as one count of felonious assault (the second felonious assault merged at sentencing). In addition, he was convicted of one six-year firearm specification, multiple three-year firearm specifications, and multiple one-year firearm specifications.

{¶ 120} The trial court imposed consecutive three-year firearm specifications for Count 1 (criminal gang activity), Count 28 (felonious assault related to the basketball court shooting), Count 33 (discharge into a habitation related to the basketball court shooting), and Count 52 (aggravated robbery of brothers and subsequent car chase), and a six-year firearm specification for Count 68 (possession of a dangerous ordnance related to the aggravated robbery of the brothers and subsequent car chase).

{¶ 121} Because Count 28 is felonious assault and Count 52 is aggravated robbery, which is one of the specified felonies in R.C. 2929.14(B)(1)(g), the trial court was required to "impose on the offender the prison term specified under division (B)(1)(a) of this section for each of the two most serious specifications of which the offender is convicted" pursuant to R.C. 2929.14(B)(1)(g). Therefore, the trial court was required to sentence Dobson to consecutive three-year terms for the firearm speculations on Counts 28 and 33, because they are part of the basketball court shooting on April 15, 2024. In addition, the trial court was required to sentence Dobson to the three-year firearm specification on Count 52, consecutive with the six-year firearm specification on Count 68, because they are both part of the

aggravated robbery of the brothers and subsequent vehicle chase that occurred on April 25, 2024.

{¶ 122} Consequently, the trial court was required to order a total of 15 years in firearm specifications (3+3+3+6=15). Thereafter, the trial court had discretion to order Dobson to serve "any or all of the remaining specifications" pursuant to R.C. 2929.14(B)(1)(g), which the trial court elected to do as evidenced by the consecutive three-year firearm specification ordered for Count 1 for a total of 18 years in firearm specifications.

{¶ 123} In summary, the trial court lacked jurisdiction to resentence Dobson because his case was pending on appeal. Additionally, the exception in R.C. 2929.14(B)(1)(g) applies to Dobson's case; therefore, the trial court was required to sentence Dobson for each of the two most serious specifications of which the offender was convicted.

{¶ 124} Accordingly, Dobson's first assignment of error is overruled.

{¶ 125} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The appellant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27

of the Rules of Appellate Procedure.


_____
MARY J. BOYLE, PRESIDING JUDGE

SEAN C. GALLAGHER, J., and
TIMOTHY W. CLARY, J., CONCUR